### UNDERWOOD TYPEWRITER CO. v. VICTOR TYPEWRITER CO.

(Circuit Court of Appeals, Second Circuit. May 16, 1911.)

No. 264.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—TYPEWRITING MACHINE.

 The Wagner patent, No. 559,345, for an improvement in typewriting machines, claim 2, the essential feature of which is a lifting spring to assist the shift-key in lifting the platen to receive impressions from upper case type, is void for lack of invention, in view of the prior art. Claim 3, conceding its validity because of an additional element, *held* not infringed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Suit in equity by the Underwood Typewriter Company against the Victor Typewriter Company. Decree for defendant, and complainant appeals. Affirmed.

Arthur v. Briesen and Eugene Eble, for appellant.

Knight Bros. (Henry C. Workman and Harry E. Knight, of counsel), for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

NOYES, Circuit Judge. This is a suit to restrain the alleged infringement of letters patent No. 559,345 issued to Franz X. Wagner, assignee, on April 28, 1906, for an improvement in typewriting machines. The complainant is the present owner of the patent.

The defenses are:

(1) Invalidity.

(2) Noninfringement.

The patent relates to "front-strike" typewriters having movable carriages in which are mounted platens or paper rollers traveling therewith to receive the impact of type-bars at proper intervals under the control of an escapement mechanism. In a typewriter of this kind the type-bars carry two different characters, generally a capital above and a small letter below, so that it is necessary that the platen should occupy two vertical positions in order to receive the impact of all the characters. As the small letters or lower case characters are more frequently used, the lower position of the platen—which receives the impact of those characters—is the normal one, and it is maintained in that position by gravity. To bring the platen so that it will receive the impact of the capital letters, a shift-lever is provided which lifts it to the upper position.

As the upwardly shifting operation of the platen is opposed to the force of gravity and as the parts to be lifted have considerable weight, the strain upon the operator's finger in continually lifting the platen becomes burdensome when a shift-key alone is used, and a feature of the claims of the patent now in issue is the employment of a lifting-spring to co-operate with and supplement the action of the shift-key.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The principal claim here involved is the second, which is as follows:

"A carriage, combined with a platen or paper roller, swinging arms connected to said roller, a shaft for said arms, a lifting-spring for the roller coiled about said shaft, and a finger-key made to co-operate with the spring for lifting the roller, substantially as described.[1]

While the complainant urges that the reduction of the muscular power required to lift the platen by the employment of the lifting-spring is a most important feature of the claim, it denies that that is the only purpose of the mechanism provided. It insists that, while the spring acts on the platen through the swinging arms to counterbalance the excess weight, yet that the swinging arms themselves fulfill an important function by so supporting the platen that it remains in parallelism to the printing line, whether in upper or lower case position, and so preserve proper alignment.

The defendant, on the other hand, while denying invention and novelty, contends that, if they are to be found at all, they must be looked for in the counterbalancing spring element of the claim; that the other elements, separately or in combination, were old, and were, in effect, conceded to be so by the patentee in the Patent Office.

The file wrapper shows—as the defendant contends—that, when the claim corresponding to the claim aforesaid was rejected by the Patent Office, the arguments advanced by the patentee against such rejection related altogether to the spring. He insisted that the patents cited against the claim did not show counterbalancing springs. Moreover, the first claim of the application as originally presented was for a combination of a carriage and a platen made shiftable independently thereof to bring the paper to the printing points of the various types. This was rejected by the Patent Office on various citations. The patentee then amended the claim by inserting the words, "and swinging arms made to connect the platen and the carriage." Again the claim was rejected, and the patentee filed a new and distinct claim which contained the spring element.

It therefore seems clear that the patentee acquiesced in the ruling that there was nothing novel in the combination of a carriage with a platen, swinging arms connected thereto, a shaft for said arms, and a finger-key for raising the platen. Furthermore, we are satisfied from our examination of the prior art as shown in the record that there was in fact nothing novel in such a combination. The platen travels upon the carriage and must have some connection thereto,

[1] Claim 3 is also in issue and reads as follows:

"A carriage, combined with a paper-roller, swinging arms connected to said roller, a shaft to which said arms are fixed, a spring coiled about the shaft, a tooth collar loosely mounted on the shaft and engaged by the spring, and a second toothed collar fixed to the shaft and engaged by the loose collar substantially as described."

It will be observed that this claim is substantially the same as the second, with the exception of the toothed collars for regulating the spring. So far as the claim may be regarded apart from this element, that which is said in the opinion regarding claim 2 is applicable to it. The effect of the presence of this element will be considered when claim 3 is separately taken up near the conclusion of the opinion.

and we think that connections by swinging arms were old in the prior art. Thus, for example, the Kidder patent, No. 471,794, had a rock-shaft and pinions serving substantially the purpose of the swinging arms of the claims.

It must also be observed that it is by no means clear that the swinging arms of the claims, acting by themselves, do fulfill the function of preserving the alignment as the complainant contends. The complainant urges in its brief and presents drawings to show that the swinging arms of the defendant's machine—which it asserts come within the claim—will not hold the platen in proper alignment, and that guides are needed for such purpose. Besides this, the complainant's experts point out a pin and slot arangement in the drawings of the patent in suit for keeping the platen plumb.

We are therefore of the opinion that the defendant is correct in its contention that without the spring element there is nothing new in the claim, and that invention and novelty must be found, if at all, in the lifting-spring.

Now it is entirely clear that the structure of the claim is operative without the lifting-spring. The complainant's witnesses who used the alleged infringing machine testify that it would work, but less easily, with the lifting-spring disconnected. The only difference was that there was more of a load to lift. It is also manifest that the connection of the spring to the other elements involves no new method of operation in the elements separately or in the combination. The platen is raised by the shift-lever, whether the spring is present or absent. The spring itself performs the same function it would perform if used elsewhere. The claim is invalid without the spring, and the bringing into the combination of the spring—concededly old in itself—and leaving it and the other elements to perform their old functions in the old way, would seem to produce little more than an aggregation.

It is unnecessary, however, to hold the claim invalid as a mere aggregation. We may take judicial notice that it was old in the art to provide counterbalances for readily lifting heavy parts of machines. Such counterbalances by weights were in general use, and counterbalancing springs were not uncommon. They were employed in typewriters. Thus the Spiro patent, No. 464,398, calls for a flat or leaf form spring for the purpose of lifting the carriage. The specification of this patent says:

"A spring, H3, is secured to the upper surface of the bed and impinges against the under surface of the track, so as to merely counterbalance the weight of the carriage and track, in order to reduce the power required to lift said carrriage."

As stated, this spring was to be used for lifting the carriage, and not for lifting the platen alone; but it indicated the use of a counterbalancing spring in a typewriter to assist in raising a more or less heavy part. The Kidder patent, No. 471,794, shows a vertical shifting platen moving independently of a carriage and provided with a counterbalancing spring. In this machine the spring which assists in lifting the roller also retards its depression to receive a third type; but, so far as it relates to the lifting operation, it indicates the

use of a lifting spring to assist the key lever in raising the platen to receive the impact of the type-bar. Other old patents show the use of reciprocating springs in connection with different parts of typewriters. While it may be that none of the structures of these patents constitutes an anticipation of the structure of the claim, yet with them in the prior art we think it did not involve invention to employ a lifting-spring in the manner stated. We think that it should have been obvious to any person skilled in the art, who found that the platen lifted with difficulty by the use of the key-lever alone, to apply in some form a lifting-spring to assist the lever. Nor do we think that it involved invention to select the old coiled spring upon a rock-shaft as the particular form.

For these reasons, it is our opinion that the second claim of the patent is invalid for want of invention in view of the prior art.

The third claim of the patent—as we have seen—is substantially the same as the second, except that it embraces means for adjusting the coiled spring on the shaft. Assuming that the claim is valid because it embraces the additional element, it is obvious that it is of the most narrow nature and must be confined substantially to the means indicated. These means are the two toothed collars—one loosely mounted on the shaft, and the other fixed thereto. In the defendant's structure, however, there is no collar loosely mounted on the shaft, and we think that the screws, which pass through the single collar and bite on the shaft, are not within any range of equivalents to which such a narrow claim is entitled.

The decree of the Circuit Court is affirmed, with costs.