## BEECROFT & BLACKMAN, Inc., v. ROONEY (LONG FURNITURE CO., Intervener).

(Circuit Court of Appeals, Second Circuit. March 27, 1922.)

No. 164.

1. Patents ⊚⟶328—1,244,944, for cabinet for talking machines, held void for lack of invention.

   The Beecroft patent, No. 1,244,944, for cabinet for talking machines, *held* void for lack of invention.

2. Patents ⊚⟶17—Accepted skill of calling not patentable.

   The accepted skill of a calling is not patentable.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by Beecroft & Blackman, Inc., against Lawrence J. Rooney, doing business as the Lawrence J. Rooney Company, with the Long Furniture Company intervening. Decree for complainant, and defendant and intervener appeal. Reversed.

For opinion below, see 268 Fed. 545.

E. G. Siggers, of Washington, D. C., and James H. Griffin, of New York City, for appellants.

W. H. C. Clarke, of New York City (F. P. Warfield and H. S. Duell, both of New York City, of counsel), for respondent.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

MANTON, Circuit Judge. The appellee sued for infringement of letters patent No. 1,244,944, granted to Clement Beecroft, covering a cabinet for talking machines. The appellee owns the patent by assignment. The defenses interposed are that the patent is invalid for want of patentable invention; also that the prior art and prior uses anticipated appellee's alleged invention.

[1] There were two types of phonograph cabinets on the market when the appellee filed the application and was awarded the patent in suit. One embodies a small casing or box, which is known as a portable machine or instrument. The casing incloses merely the sound-producing device, and is disassociated from any music record cabinet.

This type of instrument is usually supported on a table, or it may be supported without attachment on the music record cabinet. The other type embodies a casing for housing the sound-producing devices, which casing is attached to and supported on the music record cabinet. The latter type is much larger than the former, and is referred to in the trade as a built-in or floor type of machine. It is more expensive than the former. The first type, when placed on top of a cabinet, does not have the appearance of a unitary or built-in structure. The patent in suit has to do with a molding so associated with a music cabinet and portable phonograph as to convey the appearance of continuity between the phonograph and its supporting cabinet, producing the appearance of a built-in or floor type machine. It is a molding built at the joinder of both, so as to give the effect of one structure. The phonograph companies were selling portable and built-in machines. They did not sell, as a rule, the music cabinets for use with the portable machines. Music cabinets, either with plain tops or having a molding secured on the tops, were made and sold by independent manufacturers to the jobbers and retailers, who could sell the portable machines and music cabinets to the retail purchasers. As the portable machine itself and the associated music cabinet can be sold at from $10 to $15 less than the built-in type of machine, it afforded an opportunity to manufacturers of the separate music cabinets, and also the retailer, to sell the cabinets.

For several years before the appearance of the appellee's device, portable machines were on the market, and were provided with a base molding, the lower portion of which had vertical or upright sides. It was in this state of the art that the problem was presented of providing molding on music cabinets of such character and size that the molding on the portable machine may be placed within, and the co-operating molding be constructed so that the portable machine may be rested. The effect of the continuity between the molding on the portable machine and the music cabinet was secured, thereby producing the effect of a unitary or integral structure. In 1915 the Victor Phonograph Company put on the market a portable machine having a different conformation of base molding from that which it had previously employed and which is referred to above. The bottom of the molding did not have vertical or upright sides, but inclined sides and protruding feet or legs extending outwardly from the four corners of the casing. The bottom of the molding did not extend so far downward as the feet or legs and thereby left an open space on each side of the casing between the legs. With these protruding feet, it was manifestly not feasible to seat the portable box on top of the cabinet or within the co-operating molding on it in the manner heretofore described and in use in the prior portable cabinets. It was to avoid this open space that the trade was interested.

The problem presented was to provide a molding on the music cabinet which would overcome the disadvantage of the open space and still produce the effect of a unitary or built-in type of machine. By the drawings and specifications of the patent in suit, such a structure was obtained by providing on top of the music cabinet, three inward-

ly inclined cleats of sufficient height to cover the molding of the front and two sides of the portable phonograph. The phonograph may be slid from the back into position on top of the music box. This having been done, a fourth cleat is secured to the music cabinet for covering up the molding on back of the portable machine, thereby concealing the base of the portable machine and producing the effect of a unitary structure.

There are two claims in suit, which are as follows:

"1. A cabinet for a talking machine having a top on which the casing of the machine is adapted to be supported, an inclosure rising from said top, and formed of cleats which are adapted to engage the sides of the base, certain of the cleats being fixed to said top, and another cleat forming a gate for entrance into the space of the inclosure, and means for holding the gate in closed position and permitting its opening.

"2. A cabinet for a talking machine having a top on which the casing of the machine is adapted to be supported, cleats rising from said top forming an inclosure for the sides of the base of said machine and adapted to interlock therewith, one of said cleats being separate from the other cleats and movable, forming a gate for the insertion of said base into the space of said inclosure; the inner sides of the cleats overhanging, so as to form interlocking joints with said base."

The Long Furniture Company is the manufacturer of the cabinet. The appellant Rooney is a retail dealer. The record is clear that the idea of using a molding between the base of the talking machine and the top of the music box cabinet is old. The idea of making them have the appearance of a unitary structure was old. It was old to join two elements, such as a substructure or base and a superstructure or top, and this by an intermediate flange or molding, which so interfits or harmonizes with the sub or super structure as to produce the effect of an integral construction. Illustrations may be found in the patents to Kirchner, No. 179,203, application filed December 27, 1875, granted June 27, 1876; patent to Snow, No. 414,177, filed February 18, 1889, granted October 29, 1889; patent to Bostick, No. 454,251, filed March 7. 1891, granted June 16, 1891; patent to Toohey, No. 482,285, filed February 3, 1892, granted September 6, 1892. The Vaughn patent, No. 1,136,600, filed March 25, 1914, granted April 20, 1915, shows a table top secured thereto forming guideways for the reception of an article, and a cleat forming a gate between the cleats for the same purpose of letting portable articles slide in the back, as is done in the case of this portable music box.

In this state of the art, we do not think that what the patentee did amounted to patentable invention. He produced an old result—that is, obtaining a structure having the appearance of a built-in machine— by employing well-known mechanical expedients commonly used to effect the same results in various analogous arts. The problem, at most, involved the shaping of the molding to meet a particular exigency or situation. It cannot be regarded as an invention which is entitled to the protection of the patent laws. It required no invention to make a molding and so shape it as to accommodate the protruding feet as they rested upon the top of the cabinet box. It involved a simple mechanical problem of cutting and sawing molding substantially in a manner that had heretofore been done in the prior art or use, so

as to produce a housing to receive a portable machine with the legs of particular shape and comparatively simple. The appellant's The Long Furniture Company's prior use was known to the patentee, and we have no doubt that the solution of the problem will become very obvious to any skilled woodworker. It is a matter of common and general knowledge that woodworkers can and do habitually make moldings to round corners and accommodate curves and obstructions which may appear in the line. To shape corners and curves and combine formations, with separate parts joined to fit in and over objects or space, does not require inventive thought.

[2] The device is a simple one. To allow the appellee to prevail with his patent would be to lower the standard required for invention, which is constantly being raised. It needs no citation of authorities to support the doctrine that the accepted skill of a calling is not patentable, and the mere covering up or concealing of one form of molding rather than another does not involve invention. The case is controlled by the rule announced in similar cases. See Atlantic Works v. Brady, 107 U. S. 192, 2 Sup. Ct. 225, 27 L. Ed. 438; Yale Lock v. Greenleaf, 117 U. S. 554, 6 Sup. Ct. 846, 29 L. Ed. 952; Capital Metal Co. v. Kinnear, 87 Fed. 333, 31 C. C. A. 3; Hillard v. Remington Typewriter Co., 186 Fed. 334, 108 C. C. A. 534; Underwood Co. v. Victor Co., 188 Fed. 82.

The decree is reversed.